UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OWEN GARRICK, | Case No. 22-cv-04549-JST |
| Plaintiff, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART ANTI-SLAPP MOTIONS TO STRIKE AND MOTIONS TO DISMISS** |
| JOCELYN FREEMAN GARRICK, et al., | |
| Defendants. | Re: ECF Nos. 15 & 20 |

Before the Court are Defendants' anti-SLAPP motions to strike and motions to dismiss ECF Nos. 15 & 20.  The Court will grant the motions in part and deny them in part.

## I.  BACKGROUND

For purposes of the instant motion, the Court accepts the following as true.  Owen Garrick ("Garrick") and Jocelyn Freeman Garrick ("Freeman Garrick") are physicians in Alameda County. Compl. ¶ 21, ECF No. 10.  They are married but separated, and their divorce proceedings are ongoing.  *Id.* ¶ 20.  Garrick alleges that Freeman Garrick abused "her considerable power, authority, and contacts within Alameda County to harass" him, and to "gain an advantage in their pending divorce proceedings."  *Id.*  Garrick alleges that this abuse of power began in October 2019, when Freeman Garrick "filed for dissolution of the couple's 22-year marriage."  *Id.* ¶ 23.  In support of this principal allegation, Garrick identifies three incidents.

First, a complaint was filed against Freeman Garrick in August 2020 for allegedly violating Alameda County's shelter in place orders during the coronavirus pandemic.  *Id.* ¶ 25. The Alameda County Sheriff's Department reached out to Freeman Garrick via e-mail and wrote, "This came into our complaint email.  I'm closing it out.  Just want you to be aware of this person who is keeping track of your movements . . . [.]"  *Id.* ¶ 27.  Freeman Garrick forwarded the e-mail

to her divorce attorney, *id*., and informed the Sheriff's Department that Garrick was the individual who reported her, *id.* ¶ 29.  Garrick claims that the claim was false, and that Freeman Garrick abused her power in making this claim in order "to obtain leverage in the family law courts in the couple's dissolution of marriage case." *Id.* ¶ 32.  Garrick further claims that these actions intimidated him and prevented him from participating in coronavirus response calls, which denied him income, professional development, and employment opportunities. *Id.* ¶ 34.

Second, Freeman Garrick "refused to serve an order . . . while in court and all parties were present," instead using the Alameda County Sheriff's Department "to serve a DENIED restraining order when it was available and in her possession in Court." *Id.* 35.  Garrick "was served the denied restraining order by two (2) armed sheriffs who came to [his] door," which exposed him to nondescript "threats" and "intimidation." *Id.* ¶ 36.

Third, Freeman Garrick reported Dr. Valorie Spivey Herd, who appears to have been Garrick's and Freeman Garrick's family therapist, to the California Board of Psychology in an act of retaliation.  Dr. Herd had reported Freeman Garrick for committing acts of child abuse against two of Freeman Garrick's and Garrick's children. *Id.* ¶ 37.

Garrick filed suit against Freeman Garrick in her individual and official capacities as deputy medical director of Alameda County Emergency Services, deputy director of the Alameda County Emergency Medical Center, medical disaster director of Alameda Health Systems, and president of Mentoring in Science and Medicine ("MIMS").  Garrick also names as Defendants the Alameda County Sheriff's Office, Alameda County Emergency Medical Services, Alameda County Public Health Department, and MIMS.  Garrick brings claims for (1) violations of procedural due process, substantive due process, and equal protection under the Fourteenth Amendment pursuant to 42 U.S.C. § 1983; (2) conspiracy to interfere with civil rights pursuant to 42 U.S.C. § 1985; (3) interference with parenting rights pursuant to 42 U.S.C. § 1983; (4) violation of the Bane Act, Cal. Civ. Code § 52.1; (5) intentional infliction of emotional distress; (6) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*

Garrick filed the operative complaint on September 29, 2022. *See* ECF No. 10.  The

United States District Court
Northern District of California

1   County Defendants filed an anti-SLAPP motion to strike and motion to dismiss on November 2,

2   2022.[1]  ECF No. 15.  Freeman Garrick and MIMS filed an anti-SLAPP motion to strike and

3   motion to dismiss on December 1, 2022.  ECF No. 20.  The Court took the motions under

4   submission without a hearing on January 13, 2023.  ECF No. 25.

## II.   JURISDICTION

6   The Court has jurisdiction under 28 U.S.C. §§ 1331 and 1367.

## III.   LEGAL STANDARD

### A.   Anti-SLAPP Motion to Strike

9   A Strategic Lawsuit Against Public Participation under Cal. Civ. Code § 425.16 is one in

10   which "the plaintiff's alleged injury results from petitioning or free speech activities by a

11   defendant." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1109 (9th Cir. 2003).  California's

12   anti-SLAPP statute allows a defendant to move to strike a plaintiff's complaint if it "aris[es] from

13   any act of that person in furtherance of the person's right of petition or free speech under the

14   United States or California constitution in connection with a public issue."  Cal. Civ. Proc. Code

15   § 421.16(b)(1).  The California legislature has instructed that the statute should be "construed

16   broadly."  *Id.* § 425.16(a).  "Motions to strike a state law claim under California's anti-SLAPP

17   statute may be brought in federal court."  *Vess*, 317 F.3d at 1109.  However, "the anti-SLAPP

18   statute does not apply to federal law causes of action."  *Doe v. Gangland Prods., Inc.*, 730 F.3d

19   946, 955 n.3 (9th Cir. 2013) (quoting *Hilton v. Hallmark Cards*, 599 F.3d 894, 901 (9th Cir.

20   2010)).

21   A motion to strike pursuant to the anti-SLAPP statute entails a two-part inquiry.  First, a

22   defendant "must make an initial prima facie showing that the plaintiff's suit arises from an act in

---

[1] Defendants request that the Court take judicial notice of four exhibits, which include a reporter's transcript in the divorce proceedings described above and court filings in another state court proceeding involving Garrick and Freeman Garrick.  *See* ECF No. 15-1, ECF No. 20-1.  Garrick objects on a number of evidentiary grounds.  ECF No. 22-1 & 23-1.  All of the exhibits concern matters of public record and are proper subjects of judicial notice. *See United States v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011).  However, Garrick's evidentiary objections appear, in substance, to dispute the factual contents of these exhibits.  Accordingly, the Court takes judicial notice of the existence of the remaining documents, but not but not for the truth or accuracy of their contents.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001)).

United States District Court
Northern District of California

furtherance of the defendants' rights of petition or free speech." *Vess*, 317 F.3d at 1110 (quoting *Globetrotter Software, Inc. v. Elan Computer Group, Inc*., 63 F. Supp. 2d 1127 (N.D. Cal. 1999)). The statute does not apply where the "protected conduct is 'merely incidental' to the unprotected conduct." *Travelers Casualty Ins. Co. of Am. v. Hirsh*, 831 F.3d 1179, 1181 (9th Cir. 2016) (per curiam) (quoting *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP*, 133 Cal. App. 4th 658, 672 (2005)). Rather, its applicability turns on "the principal thrust or gravamen of the plaintiff's cause of action." *Peregrine Funding*, 133 Cal. App. 4th at 672-73 (quoting *Scott v. Metabolife Int'l, Inc.*, 115 Cal. App. 4th 404, 414 (2004)). The defendant need not show that the plaintiff's suit was brought with the intention to chill the defendant's speech; the plaintiff's 'intentions are ultimately beside the point.'" *Vess*, 317 F.3d at 1110 (quoting *Equilon Enters., LLC v. Consumer Cause, Inc*., 29 Cal.4th 53, 67 (Cal. 2002)).

Second, "once the defendant has made a prima facie showing, 'the burden shifts to the plaintiff to demonstrate a probability of prevailing on the challenged claims.'" *Vess*, 317 F.3d at 1110 (quoting *Globetrotter Software,* 63 F. Supp. 2d at 1129). If "the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim," the motion to strike must be denied. Cal. Civ. Proc. Code. § 425.16(b)(1). "[A] defendant's anti-SLAPP motion should be granted when a plaintiff presents an insufficient legal basis for the claims or when no evidence of sufficient sustainability exists to support a judgment for the plaintiff." *Price v. Stossel*, 620 F.3d 992, 1000 (9th Cir. 2010) (alteration in original) (quoting *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 840 (9th Cir. 2001)). "[T]hough the court does not *weigh* the credibility or comparative probative strength of competing evidence, it should grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim." *Hilton*, 599 F.3d at 903 (emphasis in original) (quoting *Wilson v. Parker, Covert & Chidester*, 28 Cal. 4th 811, 821 (2002)).

### B.    Motion to Dismiss

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "a short and plain statement of the claim showing that the pleader is

entitled to relief." Fed. R. Civ. P. 8(a)(2).  Dismissal "is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Factual allegations need not be detailed, but facts must be "enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  While this standard is not "akin to a 'probability requirement' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).  In determining whether a plaintiff has met the plausibility requirement, a court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the plaintiff.  *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).  A plaintiff may "plead[] facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible." *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) (quoting *Arista Records, LLC v. Doe 3*, 603 F.3d 110, 120 (2d Cir. 2010)).

## IV.   DISCUSSION

### A.   Anti-SLAPP Motions to Strike

Defendants argue that the gravamen of each of Garrick's state law claims is a challenge to Freeman Garrick's protected conduct and that each of these claims fails as a matter of law. Garrick contends that the anti-SLAPP statute does not apply because Freeman Garrick's alleged conduct was unlawful.  Because the anti-SLAPP statute does not apply to federal law causes of action, the Court will consider these arguments only as to Garrick's state law claims.

### 1.      Gravamen of Each State Law Cause of Action

The Court agrees with Defendants that the gravamen of each of Garrick's state law claims is a challenge to protected conduct.  As discussed above, Garrick principally alleges that the case concerns an "abuse of power" committed by Freeman Garrick to "gain an advantage in [Garrick and Freeman Garrick's] pending divorce proceedings."  ECF No. 10 ¶ 20.  Each state law claim incorporates this principal allegation.  Garrick's state law claims are also predicated on allegations relating to Freeman Garrick's claim that Garrick harassed her at her place of work; the Sheriff's Department's conduct in serving papers relating to the restraining order; the Sheriff's Department's communications with Freeman Garrick concerning the complaint made against her; and Freeman Garrick's reporting of Dr. Herd to the California Board of Psychology.  *Id.* ¶ 57. Garrick's claim under the UCL is based on the foregoing conduct but adds new allegations, based solely on information and belief, that Freeman Garrick effected a scheme through MIMS in which she obtained kickbacks in violation of the Stark Act, 42 U.S.C. § 1395nn, and the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b).  *Id.* ¶¶ 69-72.

Because Freeman Garrick's attempt to again an advantage in the ongoing divorce proceedings comprises the gravamen of Garrick's state law claims, the claims necessarily "arise from" Freeman Garrick's litigation activity, which the anti-SLAPP statute shields.  *See Rusheen v. Cohen*, 37 Cal. 4th 1048, 1058 (Cal. 2006) ("A cause of action 'arising from' defendant's litigation activity may appropriately be the subject of a section 425.16 motion to strike."); *accord Kolar v. Donahue, McIntosh & Hammerton*, 145 Cal. App. 4th 1532, 1537 (2006) ("The anti-SLAPP protection for petitioning activities applies not only to the filing of lawsuits, but extends to conduct that relates to such litigation."); *Kashian v. Harriman*, 98 Cal. App. 4th 892, 908 (2002) (explaining that California courts "have adopted a fairly expansive view of what constitutes litigation activities within the scope of section 425.16"); *cf. Hudson Martin Ferrante Street Witten & Demaria v. Forsythe*, No. 16-cv-06551-BLF, 2017 WL 1315576, at *3 (N.D. Cal. Apr. 7, 2017) (holding that claims were based on protected activity where the plaintiff alleged that the defendant engaged in the challenged conduct "to gain advantage, financial and otherwise, in his divorce proceedings").

United States District Court
Northern District of California

Garrick's other claims also concern protected activity.  Freeman Garrick's communications with the police clearly fall within the ambit of the anti-SLAPP statute.  *Comstock v. Aber*, 212 Cal. App. 4th 931, 941-42 (2012) ("[C]ommunications to the police are within SLAPP."); *Kenne v. Stennis*, 230 Cal. App. 4th 953, 966 (2014) ("[T]he making of allegedly false police reports also can be protected petitioning activity under the first prong of the anti-SLAPP statute if the falsity of the report is controverted."); *Lauter v. Anoufrieva*, 642 F. Supp. 1060, 1108 (C.D. Cal. 2009) ("[C]onduct that would otherwise come within the scope of the [a]nti-SLAPP statute does not lose its coverage simply because it is alleged to have been unlawful or unethical.").[2]  The Sheriff's Department's conduct in serving Garrick with papers related to a restraining order was not only related to ongoing litigation, but it was also statutorily authorized.  *See* Cal. Gov't Code § 26665 ("All writs, notices, or other process issued by superior courts in civil actions or proceedings may be served by any duly qualified and acting marshal or sheriff of any county in the state, subject to the Code of Civil Procedure."); *accord Crane v. Dolihite*, 70 Cal. App. 5th 772, 785 (2021).  Freeman Garrick's reporting of Dr. Herd to the California Board of Psychology is a statement made in connection with an official proceeding authorized by law within the meaning of Civ. Code § 425.16(e)(1).  *See* Cal. Bus. & Prof. Code §§ 129 & 2903.  As to Freeman Garrick's claim that Garrick "harassed her at her place of work," *e.g.* ECF No. 10 ¶ 52, the complaint does not specify the defendant to whom that claim is directed.  Regardless, the result is the same.  Freeman Garrick's conduct in allegedly making the claim is protected under the anti-SLAPP statute if it was directed to the police or to a court for the reasons discussed above.  Therefore, Garrick's state law claims arise from protected conduct.

### 2.    Probability of Success

#### a.    Bane Act Claim

The Bane Act "provides a cause of action for violations of a plaintiff's state or federal civil

---

[2] Garrick's reliance on *Lefebvre v. Lefebvre*, 199 Cal. App. 4th 696 (2011), is misplaced.  There, the Court of Appeal held that the anti-SLAPP statute did not apply because the plaintiff's claim was premised on a false police report within the meaning of Cal. Penal Code § 148.5.  *Id.* at 705-06.  The record in that case "conclusively established" that the defendant's conduct was "illegal activity"  *Id.* at 701.  There is no such record here; there is merely a conclusory allegation that Freeman Garrick made a false statement to the police.

rights." *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1041 (9th Cir. 2018) (quoting *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1105 (9th Cir. 2014)).  The Bane Act requires a plaintiff to show "(1) intentional interference or attempted interference with a state or federal constitutional or legal right, and (2) [that] the interference or attempted interference was by threats, intimidation[,] or coercion." *Lawrence v. City and Cnty. of San Francisco*, 258 F. Supp. 3d 977, 994-95 (N.D. Cal. 2017) (quoting *Allen v. City of Sacramento*, 234 Cal. App. 4th 41, 2015), *as modified on denial of reh'g* (Mar. 6, 2015), *review denied* (May 20, 2015)).  Because the Act "was intended to address only egregious interferences with constitutional rights, not just any tort[,] [t]he act of interference with a constitutional right must itself be deliberate or spiteful." *Julian v. Mission Cmty. Hosp.*, 11 Cal. App. 5th 360, 395 (2017) (quoting *Shoyoye v. Cnty. of Los Angeles*, 203 Cal. App. 4th 947, 950 (2012)).  "Speech is insufficient to establish the requisite threat unless it includes threat of violence." *Id.*

Garrick has not established a probability of prevailing on this claim for two reasons.  First, the complaint is devoid of facts showing that Defendants committed egregious interferences with Garrick's constitutional rights by way of threats, intimidation, or coercion of a deliberate or spiteful nature.  The Sherriff's department's statutorily authorized conduct in serving Garrick with papers related to the restraining order cannot, without more, be construed as an interference with Garrick's constitutional rights at all.  With respect to Freeman Garrick's claim that Garrick harassed her at her place of work, the complaint is similarly devoid of any factual allegations that would enable the Court to conclude that a constitutional interference occurred, that the interference was achieved through threats, intimidation, or coercion, or that Garrick acted deliberately or with spite.  The complaint states only that "FREEMAN GARRICK claimed that OWEN GARRICK harassed her at her place of work by participating on a standing County wide COVID response call to which OWEN GARRICK was invited and had been attending before she started participating," and that by so doing, "FREEMAN GARRICK successfully intimidated OWEN GARRICK from participating in COVID response calls which was part of OWEN GARRICK'S job at the time."  ECF No. 10  ¶ 52.  Even assuming the truth of this allegation, a reasonable person would not "have been intimidated by the actions of [Freeman Garrick]," much

less "have perceived a threat of violence." *Ruelas v. Cnty. of Alameda*, 519 F. Supp. 3d 636, 662 (N.D. Cal. 2021) (quoting *Richardson v. City of Antioch*, 722 F. Supp. 2d 1133, 1147 (N.D. Cal. 2010)).

Second, the remainder of Freeman Garrick's conduct in connection with this claim is privileged. Her communications with the Sherriff's department are privileged by Cal. Civ. Code § 47(b)(3), which privileges any communication made "[i]n any . . . official proceeding authorized by law." *See Comstock*, 212 Cal. App. 4th at 952 (explaining that the privilege "covers communications to the police or other government authorities," "is to be given 'an expansive reach,'" "is absolute, and even covers false and malicious statements" (quoting *Rubin v. Green*, 4 Cal. 4th 1187, 1194 (1993)). Her reporting of Dr. Herd to the California Board of Psychology is privileged by Cal. Civ. Code § 47(b)(3) for the same reason.[3] *See* Cal. Bus. & Prof. Code §§ 129 & 2903.

### b.   Intentional Infliction of Emotional Distress Claim

A plaintiff bringing a claim for intentional infliction of emotional distress "must show that the defendants intentionally or recklessly caused him to suffer 'severe or extreme emotional distress' through their 'extreme and outrageous conduct.'" *Sarver v. Chartier*, 813 F.3d 891, 907 (9th Cir. 2016) (quoting *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009)). For similar reasons to those discussed with respect to Garrick's Bane Act claim, Garrick has not demonstrated a probability of prevailing on this claim. The allegations relating to the Sherriff's department's statutorily authorized conduct and Freeman Garrick's claim of harassment are devoid of basic facts that would support a characterization of these actions as extreme or outrageous, or that these actions caused Garrick's distress intentionally or recklessly. Freeman Garrick's remaining conduct is privileged.

---

[3] Garrick additionally lacks standing to bring claims predicated on this allegation because he has failed to establish that he suffered an "injury in fact" as a consequence of this conduct. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016). Rather, he conclusory alleges that Freeman Garrick's reporting "is a blatant attempt to cudgel [him] to violate his fundament [sic] rights to parenting." ECF No. 10 ¶ 47.

United States District Court
Northern District of California

### c.    UCL Claim

"The UCL broadly prohibits 'unfair competition,' defined as 'any unlawful, unfair or fraudulent business practice." *Friedman v. AARP, Inc.*, 855 F.3d 1047, 1051 (9th Cir. 2017) (quoting Cal. Bus. & Prof. Code § 17200).  "Whether a particular act is business related 'is a question of fact dependent on the circumstances of each case.'"  *People ex rel. City of Santa Monica v. Gabriel*, 186 Cal. App. 4th 882, 888 (2010) (quoting *People v. EWAP, Inc.*, 106 Cal. App. 3d 315, 320-32 (1980).  "With respect to the unlawful prong of section 17200, it is clear that '[v]irtually any state, federal, or local law can serve as the predicate.'"  *Id.* at 1052 (quoting *People ex rel. Lockyer v. Fremont Life Ins. Co.*, 104 Cal. App. 4th 508, 515 (2002)).  "To state a claim under either" the unfair or fraudulent prongs, "a plaintiff's 'burden of proof is modest: the representative plaintiff must show that members of the public are likely to be deceived by the practice."  *Id.* at 1055 (quoting *Prata v. Sup. Ct.*, 91 Cal. App. 4th 1128, 1144 (2001)).

Garrick has failed to demonstrate a probability of success on his claims under each of the three prongs of the UCL.  Nearly all of the conduct underpinning the claims cannot be considered to constitute a business practice.  There is nothing business-related about Freeman Garrick's claim of harassment or the Sheriff's Department's conduct in serving the papers related to the restraining order.  *Cf. Loza v. Wells Fargo Bank, NA*, CV 20-1354 DSF (SKx), 2020 WL 13281409, at *10 (C.D. Cal. Apr. 21, 2020) (holding that theft from a bank account was business related where the theft "was made possible by the commercial relationship between Plaintiffs and Defendant and therefore may have had an 'integral connection' with commercial activity" (quoting *Gabriel*, 186 Cal. App. at 888)).  And because Freeman Garrick's communications with the Sheriff's Department and reporting of Dr. Herd are privileged by Cal. Civ. Code § 47(b), that conduct cannot serve as the basis of a UCL claim.  *People ex rel. Gallegos v. Pacific Lumber Co.*, 150 Cal. App. 4th 950, 965 (2008) (holding that plaintiffs "may not use the general unfair competition law to assault" the "safe harbor" provided by Section 47(b) (quoting *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 180 (1999)).  With respect to his claim under the "unlawful" prong, Garrick also alleges that Freeman Garrick effected a kickback scheme through MIMS in violation of state and federal law.  This allegation is both conclusory and insufficient to

1    establish standing because Garrick does not aver that he suffered an economic injury as a result of

2    this conduct.  *See Kwikset Corp. v. Sup. Ct.*, 51 Cal. 4th 310, 320 (2011) (holding that a plaintiff

3    must, in order to establish standing to bring a UCL claim, "(1) establish a loss or deprivation of

4    money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that

5    that economic injury was the result of, i.e., *caused by*, the unfair business practice . . . that is the

6    gravamen of the claim." (emphases in original)).

7        For these reasons, the Court will grant Defendants' anti-SLAPP motions as to Garrick's

8    state law claims but deny the motion as to Garrick's federal claims.

9                    **3.    Attorney's Fees and Costs**

10       "[A] prevailing defendant on a special motion to strike shall be entitled to recover his or

11   her attorney's fees and costs."  Cal. Code Civ. Proc. § 415.16(c)(1).  Accordingly, the Defendants

12   are "entitled to recover attorney fees and costs incurred in moving to strike the claims on

13   which . . . [they] prevailed."  *Choyce v. SF Bay Area Indep. Media Ctr.,* No. 13-CV-01842-JST,

14   2013 WL 6234628, at *10 (N.D. Cal. Dec. 2, 2013).  Defendants may therefore move for fees and

15   costs.  The Court notes that "[w]ork that is inextricably intertwined with an anti-SLAPP motion is

16   compensable," but "work performed on federal claims is not compensable."  *Fallay v. San*

17   *Francisco City and County*, No. C 08-2261 CRB, 2016 WL 879632, at *3 (N.D. Cal. Mar. 8,

18   2016).

19               **B.    Motions to Dismiss**

20       Because the Court will grant the anti-SLAPP motions as to Garrick's state law claims, the

21   Court will only address the motions to dismiss as to the remaining federal claims.

22                    **1.    Section 1983 Claims**

23       For a person to be subject to suit under Section 1983, the person must "fairly be said to be

24   a [governmental] actor."  *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835 (9th Cir.

25   1999) (alteration in original) (quoting *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937

26   (1982)).  "Section 1983 'excludes from its reach merely private conduct, no matter how

27   discriminatory or wrong.'"  *Heineke v. Santa Clara Univ.*, 965 F.3d 1009, 1012 (2020) (quoting

28   *Sutton*, 192 F.3d at 835).  The Court begins "with the presumption that private conduct does not

United States District Court
Northern District of California

11

constitute governmental action." *Id.* (quoting *Sutton*, 192 F.3d at 835).

Although Freeman Garrick holds official positions within the County, none of the complaint's allegations show her acting in what can plausibly be characterized as an official capacity. Freeman Garrick's communications with the Sheriff's Department were premised on that department's attempts to ensure that Freeman Garrick was "aware of this person who [wa]s keeping of her movements." *E.g.*, ECF No. 10 ¶ 43. While the Sheriff's Department expressed a desire "to make sure our people are safe," *id.*, Freeman Garrick's role in the conversation was the same as would be expected of any private citizen. That the Sheriff's Department communicated with Freeman Garrick through her "County email address" is irrelevant. *Id.* Similarly, the allegations regarding the restraining order pertain to Garrick's private participation in her own divorce proceedings. And Freeman Garrick's reporting of Dr. Herd appears to have occurred following a family therapy session, which is similarly private in nature. *See id.* ¶ 37. There is no indication in the complaint that Freeman Garrick engaged in any of this conduct in her capacity as a County official, and Garrick has not otherwise alleged that "the state 'has exercised coercive power or has provided such significant encouragement' that the challenged action must be considered that of the state." *Heineke*, 965 F.3d at 1013 (quoting *Blum v. Yaretsky*, 457 U.S. 991 (1982)). Accordingly, the Court will grant the motions as to these claims.[4]

### 2.    Section 1985 Claim

Garrick brings claims pursuant to both Section 1985(2) and Section 1985(3). *See* ECF No. 10 ¶ 44. "Section 1985(2) contains two clauses that give rise to separate causes of action." *Portman v. Cnty. of Sara Clara*, 995 F.2d 898, 908. The first clause "addresses conspiracies 'which deter by force, intimidation, or threat a party or witness in federal court.'" *Bagley v. CMC Real Est. Corp.*, 923 F.2d 758, 763 (9th Cir. 1991). The second clause "creates a federal right of action for damages against conspiracies which obstruct the due course of justice in any State or Territory with intent to deny equal protection." *Id.* A claim under this second clause "requires an allegation of class-based, invidiously discriminatory animus." *Id.* (quoting *Phillips v.*

---

[4] Even if the allegations demonstrated that Freeman Garrick acted in an official capacity, the complaint is devoid of basic facts that would establish a constitutional violation.

12

*Bridgeworkers Loc. 118*, 556 F.3d 939, 941 (9th Cir. 1977)).  To state a claim under 1985(3), "a plaintiff must [allege], *inter alia*, (1) that 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus [lay] behind the conspirators' action,' . . . and (2) that the conspiracy 'aimed at interfering with rights' that are 'protected against private, as well as official, encroachment.'"  *Butler v. Elle*, 281 F.3d 1014, 1028 (9th Cir. 2002) (alterations in original) (quoting *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267-68 (1993)).

All of Garrick's Section 1985 claims fail because he has not alleged the existence of "an agreement or 'meeting of the minds' by [Defendants] to violate his constitutional rights."  *Caldeira v. Cnty. of Kauai*, 866 F.2d 1175, 1181 (9th Cir. 1989).  Garrick also fails to state a claim under first clause of Section 1985(2) because he has not alleged a proceeding in federal court from which Defendants' conduct deterred his participation.  Garrick's claims under the second clause of Section 1985(2) and under Section 1985(3) also fail because he has not alleged invidiously discriminatory class-based or race-based animus.  Accordingly, the Court will grant the motions as to Garrick's federal claims but deny the motions as moot as to the state law claims.

## CONCLUSION

For the foregoing reasons, Defendants motions are granted in part and denied in part.  Defendants may move for attorney's fees and costs pursuant the Court's partial grant of their anti-SLAPP motions.  Dismissal of all claims is with leave to amend because the Court is unable to conclusively determine that the complaint could not possibly be cured by the allegation of additional facts.  *See Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1039 (9th Cir. 2002).  Garrick may file an amended complaint solely to attempt to cure the deficiencies identified herein within 21 days of the date of this order, provided that he has a good faith basis for doing so.  Failure to file a timely amended complaint will result in dismissal with prejudice.

**IT IS SO ORDERED.**

Dated:  June 21, 2023



JON S. TIGAR
United States District Judge