UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OWEN GARRICK,<br><br>        Plaintiff,<br><br>v.<br><br>JOCELYN FREEMAN GARRICK, et al.,<br><br>        Defendants. | Case No. 22-cv-04549-JST<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS**<br><br>Re: ECF Nos. 48, 52 |

Before the Court are Defendants' anti-SLAPP motions to strike and motions to dismiss Plaintiff Owen Garrick's second amended pro se complaint. ECF Nos. 48, 52. The Court will grant the motion to dismiss the federal claims and decline to exercise supplemental jurisdiction over the remaining state law claims.

## I.    BACKGROUND

### A.    Factual Background

The Court accepts the following allegations from the second amended complaint ("SAC") as true and views them in the light most favorable to Plaintiff. *Oregon Clinic, PC v. Fireman's Fund Ins. Co.*, 75 F.4th 1064, 1067 (9th Cir. 2023).

Owen Garrick ("Garrick") and Jocelyn Freeman Garrick ("Freeman Garrick") are physicians in Alameda County. ECF No. 46 ¶ 20. Together they founded Mentoring in Medicine & Science, Inc. ("MIMS") a 501(c)(3) non-profit organization with the mission of increasing diversity in the healthcare workforce. *Id.* ¶ 22.

Freeman Garrick is the deputy medical director of Alameda County emergency services, lead COVID-19 testing and vaccination coordinator, medical disaster director of Alameda County health systems, and the President of MIMS. *Id.* ¶ 3. Garrick alleges on information and belief that

Freeman Garrick is "a member of law enforcement" who "has been issued a badge by the County of Alameda." *Id.* ¶ 27 n.1.

In October 2019, Freeman Garrick "filed for dissolution of the couple's 22-year marriage." *Id.* ¶ 23. Around the same time, Garrick alleges that Freeman Garrick began to abuse "her considerable power, authority, and contacts within Alameda County to harass" him, and to "gain an advantage in their pending divorce proceedings." *Id.* ¶¶ 3, 24. Garrick identifies four incidents in support of this allegation.

First, a complaint was filed against Freeman Garrick in August 2020 for allegedly violating Alameda County's shelter in place orders during the COVID-19 pandemic. *Id.* ¶ 25. Sergeant Ray Kelly of the Alameda County Sheriff's Department reached out to Freeman Garrick via her county e-mail address and wrote, "[t]his came into our complaint email. I'm closing it out. Just want you to be aware of this person who is keeping track of your movements." *Id.* ¶ 28. Freeman Garrick informed the Sheriff's Department that Garrick was the individual who reported her. *Id.* ¶ 30. Garrick claims that "[a]s a direct result of such abuse of power under the color of her authority as an official, director, and employee of Defendant County of Alameda, the deputy sheriff closed out the reported criminal complaint . . . and took no further action." *Id.* ¶ 29. Garrick also claims that because of Freeman Garrick's accusation, Garrick "potentially faced misdemeanor charges." *Id.* ¶ 63.

Second, Garrick alleges that:

> On or about November 2020, FREEMAN GARRICK refused to serve an order (she had counsel, and the clerk facilitates) while in court and all parties were present. Instead, she arranged to use the aforementioned ALAMEDA COUNTY SHERIFF'S DEPARTMENT to serve a DENIED restraining order when it was available and in her possession in Court.

*Id.* ¶ 59.[1] Garrick "was served the denied restraining order by two (2) armed sheriffs." *Id.* ¶ 60. One of these two officers allegedly said "Jocelyn is one of us with the County. We protect our

---

[1] The SAC does not define "denied restraining order," but the Court infers that Freeman Garrick applied for a temporary restraining order from the Alameda County Superior Court and her application was denied. Because it appears from the SAC that Garrick was present in court when the court denied the application, it is unclear why there was any need to serve him with a denied order or how he could have suffered any injury from such service.

United States District Court
Northern District of California

people at the County.  If you continue to harass her, we will be back.  It is a shame how Black men are dying at the hands of the police, and we wouldn't want that to happen in a mishap."  *Id.* ¶ 38.  The other officer added "[y]eah Mr. Garrick, it would be a shame for you to have an untimely mishap if we have to come back here."  *Id.*

Third, Freeman Garrick made several disparaging statements about Garrick that caused adverse employment outcomes.  Garrick alleges that Freeman Garrick, "while acting in her official capacity as an officer, deputy director, and employee of Defendant County of Alameda," "coerc[ed] others . . . to believe that" Garrick "was mentally impaired, a danger to himself and others, was unprofessional, irresponsible and incapable of performing his duties as a member of the MIMS Board of Directors."  *Id.* ¶ 33.  As a result, Garrick claims he was "ousted from his position."  *Id.*  Next, during an Alameda County COVID-19 plan conference call, Freeman Garrick "impugn[ed] his character and reputation amongst his colleagues by making false statements about [him], his removal from the MIMS Board of Directors, and allegations of incompetence to the point that [he] felt attacked and humiliated and was constructively forced off the call."  *Id.* ¶ 36.  Thereafter, that Freeman Garrick "while acting in her official capacity as an official, director, and employee of Defendant County of Alameda, continued her false assertion" of Garrick's "threatening behavior toward her while at work," *id.* ¶ 34, and that he "verbally harassed and threatened her while at a County of Alameda function," *id.* ¶ 35.

Finally, Dr. Valorie Spivey Herd—Garrick's and Freeman Garrick's family therapist—had reported Freeman Garrick for committing acts of child abuse against two of Freeman Garrick's and Garrick's children.  *Id.* ¶ 62.  Garrick alleges that Freeman Garrick reported Dr. Herd to the California Board of Psychology in an act of retaliation.  *Id.*

Garrick now brings claims for (1) violations of his Fourth Amendment and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983; (2) conspiracy to interfere with civil rights pursuant to 42 U.S.C. § 1985; (3) violation of the Bane Act, Cal. Civ. Code § 52.1; (4) intentional infliction of emotional distress; and (5) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*  ECF No. 46.

Garrick brings these claims against Defendants Jocelyn Freeman Garrick (in her individual

United States District Court
Northern District of California

1   and official capacities), the County of Alameda, Deputies Karl and John Doe of the Alameda

2   County Sheriff's Department (in their individual and official capacities), and MIMS (together

3   "Defendants"). *Id.*

4        **B.      Procedural Background**

5        On June 21, 2023, the Court granted in part and denied in part Defendants' first motions to

6   dismiss and anti-SLAPP motions to strike, granting leave to amend.  ECF No. 39.  Garrick filed

7   his SAC on August 9, 2023.  ECF No. 46.  Defendants filed motions to dismiss and anti-SLAPP

8   motions to strike the SAC on August 22, 2023.[2]  ECF Nos. 48, 52.  The Court took the motions

9   under submission without a hearing on December 1, 2023.  ECF No. 64.

10  **II.    JURISDICTION**

11       The Court has jurisdiction under 28 U.S.C. § 1331.

12  **III.   LEGAL STANDARD**

13       To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a

14  complaint must contain "a short and plain statement of the claim showing that the pleader is

15  entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Rule 12(b)(6) of the Federal Rules of Civil Procedure

16  provides that a complaint may be dismissed for failure to state a claim upon which relief can be

17  granted for one of two reasons: (1) lack of a cognizable legal theory or (2) insufficient facts under

18  a cognizable legal theory.  *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533–34 (9th

19  Cir. 1984); *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  "[A]

20  complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

21  plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

22  *Twombly*, 550 U.S. 544, 570 (2007)).  Factual allegations need not be detailed, but facts must be

23

24  [2] Defendants request that the Court take judicial notice of four exhibits, which include a reporter's
    transcript in the divorce proceedings and court filings in another state court proceeding involving
25  MIMS, Garrick, and Freeman Garrick.  *See* ECF No. 53.  Garrick objects on a number of
    evidentiary grounds.  ECF No. 61.  All the exhibits concern matters of public record and are
26  proper subjects of judicial notice.  *See United States v. Corinthian Colls.*, 655 F.3d 984, 999 (9th
    Cir. 2011).  Garrick's relevance objection to Exhibit A is overruled.  Because Defendant seeks to
27  admit Exhibit B (First Amended Complaint filed by Plaintiff Mentoring in Medicine & Science,
    Inc. on December 1, 2021, in Alameda County Superior Court Action No. HG21097836) only to
28  show that a lawsuit was filed, and not for the truth of the complaint's contents, Garrick's hearsay
    objection is overruled.  His objections to Exhibits C and D are overruled on the same grounds.

"enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. While this standard is not "akin to a 'probability requirement' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). In determining whether a plaintiff has met the plausibility requirement, a court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the plaintiff. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). A plaintiff may "plead[] facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible." *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) (quoting *Arista Recs., LLC v. Doe 3*, 603 F.3d 110, 120 (2d Cir. 2010)).

## IV.   DISCUSSION

The Court first addresses the Defendants' motion to strike. The Court then reviews the sufficiency of Garrick's allegations against Defendants MIMS and County of Alameda, and then the sufficiency of his federal claims under Sections 1983 and 1985 against Defendants Freeman Garrick and Officers Karl and John Doe ("Officers").

### A.   Motion to Strike

The Court first considers Defendants' motion to strike "new defendants, new claims, and new damages" from the SAC. ECF No. 48 at 17–18. The Court previously dismissed Garrick's claims with leave to amend. ECF No. 39 at 13.

"Under Rule 12(f) of the Federal Rules of Civil Procedure, the Court 'may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.' The function of a motion to strike pursuant to Rule 12(f) is 'to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial.'" *Scilex Pharms. Inc. v. Sanofi-Aventis U.S. LLC*, No. 21-CV-01280-JST, 2021 WL 11593043, at *2 (N.D. Cal. Aug. 16, 2021) (quoting *Whittlestone, Inc. v. Handi-Craft Co.*, 618

United States District Court
Northern District of California

F.3d 970, 973 (9th Cir. 2010)).  "[M]otions to strike are disfavored at the pleading stage and are generally not granted unless it is clear that the matter sought to be stricken could have no possible bearing on the subject matter of the litigation." *Id.* at *13 (internal quotation marks and citations omitted).

Garrick explains that he amended the SAC to "provide[] additional facts and legal argument all within the scope of the Court's direction." ECF No. 60 at 11.  Defendants argue that Garrick was not granted leave to add defendants or further claims. ECF No. 48 at 17–18.

Because the Court below grants Defendants' motion to dismiss on the merits, their motion to strike is denied as moot.

### B.    Sufficiency of the Allegations Against Defendant MIMS

A "plaintiff must allege the basis of [their] claim against each defendant to satisfy Federal Rule of Civil Procedure 8(a)(2), which requires a short and plain statement of the claim to put defendants on sufficient notice of the allegations against them." *Ferrin v. City of San Rafael*, No. 22-cv-02101-JST, 2022 WL 20243402, at *1 (N.D. Cal. Apr. 14, 2022) (citation omitted) (alteration in original).  That is, a plaintiff must "(1) identify the legal and factual basis for each cause of action, (2) identify which cause of action is brought against which Defendant, and (3) provide a specific statement of how each Defendant engaged in the conduct that is the basis for the claims asserted against that Defendant." *Id.* at *2 (quoting *Fleming v. Cigna Health Corp.*, No. 15-cv-04646-EMC, 2016 WL 3439800, at *3 (N.D. Cal. June 23, 2016)).

Although Garrick names MIMS as a defendant in his federal claims, Garrick's SAC does not allege any specific conduct by MIMS with respect to these claims.  Accordingly, MIMS is dismissed from Garrick's federal causes of action.

### C.    Sufficiency of the Allegations Against Defendant County of Alameda

Garrick also brings a Section 1983 claim against the County of Alameda.  "A government entity may be held liable under 42 U.S.C. § 1983 if an 'action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.'" *Samson v. City of Bainbridge Island*, 683 F.3d 1051, 1057 (9th Cir. 2012) (quoting *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690 (1978)).  A

United States District Court
Northern District of California

municipal liability claim is also known as a *Monell* claim.  *E.g., Quiroga v. King*, No. 1:15-CV-01697-AWI-MJS-PC, 2016 WL 2609805, at *2 (E.D. Cal. May 6, 2016).  Under this standard, a municipality is liable "in three situations: when the plaintiff was injured pursuant to an expressly adopted official policy, a long-standing practice or custom, or the decision of a final policymaker." *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1066 (9th Cir. 2013) (internal citations and quotation marks omitted).

Garrick has not alleged any facts in his SAC that supports the existence of a policy, a longstanding custom, or a decision of a final policymaker within the County of Alameda that caused the alleged constitutional violations.  *V.W. v. Cnty. of Los Angeles*, No. 18-CV-3684-FMO (AGRx), 2018 WL 6137188, at *1 (C.D. Cal. July 5, 2018) (dismissing a complaint because it did not sufficiently allege the existence of a policy, practice, or custom, or the decision of a final policymaker.)  Accordingly, the Court dismisses Garrick's federal claims against the County.

**D.      Sufficiency of the Section 1983 Allegations**

The Court turns next to Garrick's Section 1983 claims against Freeman Garrick, and Officers Karl and John Doe in their individual capacities.

"To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law." *Bryant v. Motel 6 Manager*, No. 03-CV-3290-VRW(PR), 2003 WL 21767461, at *1 (N.D. Cal. July 25, 2003) (citing *West v. Atkins,* 487 U.S. 42, 48 (1988)).

**1.      Freeman Garrick**

With respect to Freeman Garrick, Garrick claims she abused her authority as a deputy medical director of Alameda County or as a deputized law enforcement official in four different instances: (1) by allegedly compelling the Sheriff's Department to close the complaint against her for violating the shelter in place order; (2) by serving Garrick with a denied restraining order; (3) by making disparaging statements on conference calls; and (4) by reporting Dr. Herd.  *See generally* ECF No. 46.  Defendants argue that none of these four incidents constitute a state action, or in the alternative that Garrick has failed to demonstrate a constitutional deprivation arising from

United States District Court
Northern District of California

1    these four incidents.  ECF No. 48 at 18–20; ECF No. 52 at 15–16.

2                            a.    **State Action**

3            For a person to be subject to suit under Section 1983, the person must "fairly be said to be

4    a [governmental] actor."  *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835 (9th Cir.

5    1999) (quoting *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937 (1982)) (alteration in

6    original).  A person acts under color of state law if she "exercise[s] power 'possessed by virtue of

7    state law and made possible only because the wrongdoer is clothed with the authority of state

8    law.'"  *West*, 487 U.S. at 49.  "It is firmly established that a defendant in a § 1983 suit acts under

9    color of state law when he abuses the position given to him by the state."  *Id.* at 49–50.

10   "[G]enerally, a public employee acts under color of state law while acting in his official capacity

11   or while exercising his responsibilities pursuant to state law."  *Dang Vang v. Vang Xiong X.*

12   *Toyed*, 944 F.2d 476, 479 (9th Cir. 1991).  The Court begins "with the presumption that private

13   conduct does not constitute governmental action."  *Sutton*, 192 F.3d at 835.  "Section 1983

14   'excludes from its reach merely private conduct, no matter how discriminatory or wrong.'"  *Id.*

15   (internal citations omitted).

16           Although Section 1983 makes liable only those who act "under color of" state law, even a

17   private person can, in certain circumstances, be subject to liability under section 1983.  *Tsao v.*

18   *Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012).  "A private individual's action may be

19   'under color of state law' where there is 'significant' state involvement in the action."  *Franklin v.*

20   *Fox*, 312 F.3d 423, 444 (9th Cir. 2002) (citing *Johnson v. Knowles,* 113 F.3d 1114, 1118 (9th Cir.

21   1997)).  "The Supreme Court has articulated four tests for determining whether a private

22   individual's actions amount to state action: (1) the public function test; (2) the joint action test; (3)

23   the state compulsion test; and (4) the governmental nexus test."  *Id.* (quoting *Johnson*, 113 F.3d at

24   1118).

25           Only the joint action test is relevant here.  To hold a private actor liable for a Section 1983

26   violation under that test, the private actor's actions must be "inextricably intertwined" with those

27   of the government and there must be "substantial cooperation" between the private party and the

28   State.  *Brunette v. Humane Soc'y of Ventura Cnty.*, 294 F.3d 1205, 1211 (9th Cir. 2002), *as*

1    *amended on denial of reh'g and reh'g en banc* (Aug. 23, 2002).  The joint action test is satisfied

2    "'where the court finds a sufficiently close nexus between the state and the private actor so that the

3    action of the latter may be fairly treated as that of the State itself, or where the State has so far

4    insinuated into a position of interdependence with the [private party] that it was a joint participant

5    in the enterprise.'"  *Rawson v. Recovery Innovations, Inc.*, 975 F.3d 742, 748 (9th Cir. 2020)

6    (quoting *Jensen v. Lane Cnty.*, 222 F.3d 570, 575 (9th Cir. 2000)) (alterations in original).  The

7    Ninth Circuit "ha[s] been careful to require a substantial degree of cooperation before imposing

8    civil liability for actions by private individuals that impinge on civil rights."  *Franklin*, 312 F.3d at

9    445.

10   There is no doubt that Freeman Garrick, in her capacity as deputy medical director of

11   Alameda County emergency services and the emergency medical center, lead COVID-19 testing

12   and vaccination coordinator, and medical disaster director of Alameda County health systems, is a

13   public official.  ECF No. 46 ¶ 3.  Furthermore, taking Garrick's allegations as true, Freeman

14   Garrick is also a law enforcement official because she was "cross-deputized" during the COVID-

15   19 pandemic and was "issued a badge by the County of Alameda."  *Id.* ¶ 27 n.1.

16   But even as a public official, Freeman Garrick's alleged wrongful actions are not taken

17   under color of state law if they are not "performed while [she] is acting, purporting, or pretending

18   to act in the performance of [] her official duties."  *Anderson v. Warner*, 451 F.3d 1063, 1068 (9th

19   Cir. 2006) (internal citations and quotation marks omitted).  Thus, the Court must determine

20   whether Freeman Garrick's actions related to the duties and powers of her positions as deputy

21   medical director, COVID-19 testing and vaccination coordinator, or a deputized law enforcement

22   official.

23   First, with respect to the complaint that was filed against Freeman Garrick for allegedly

24   violating Alameda County's shelter in place orders, Garrick claims that Sergeant Ray Kelly

25   "forwarded the complaint . . . to FREEMAN GARRICK . . . at her County email address at work."

26   ECF No. 46 ¶ 28.  Freeman Garrick, "in her official capacity reported to the Alameda County

27   Sheriff . . . that OWEN GARRICK was the individual that reported her to the complaint

28   department, despite her knowledge this was, in fact, untrue."  *Id.* ¶ 30.  Garrick claims that

United States District Court
Northern District of California

Freeman Garrick "use[d] her influence as the director of various County of Alameda Health Organizations," to convince Sergeant Ray Kelly that the complaint was false and was made by Garrick. *Id.* ¶ 27. "As a direct result of such abuse of power under the color of her authority . . . the deputy sheriff closed out the reported criminal complaint . . . and took no further action." *Id.* ¶ 29.

These allegations are insufficient to find that Freeman Garrick acted under color of state law. As the Defendants point out, Garrick acknowledges that Freeman Garrick was the "recipient of an unsolicited email" from the Sheriff's department. *Id.* ¶ 27 n.1. The email states "[t]his came into our complaint email. I'm closing it out. Just want you to be aware of this person who is keeping track of your movements." *Id.* ¶ 28. Taking Garrick's statements as true, the language of the email indicates that Freeman Garrick did not participate in the Sheriff's Department's decision to close the complaint, because that decision had already been made. Freeman Garrick's response to that email, complaining that Garrick was likely the individual that reported her, does not convert her into a state actor. *See Collins v. Womancare*, 878 F.2d 1145, 1155 (9th Cir. 1989) ("merely complaining to the police does not convert a private party into a state actor.").

Second, Garrick alleges that Freeman Garrick made several disparaging statements about Garrick that caused him to be "constructively forced off" the COVID-19 conference call, and to be "ousted" from his MIMS board position. That is, Freeman Garrick "while acting in her official capacity as an officer, deputy director, and employee of Defendant County of Alameda," "coerc[ed] others . . . to believe that" Garrick "was mentally impaired, a danger to himself and others, was unprofessional, irresponsible and incapable of performing his duties as a member of the MIMS Board of Directors," ECF No. 46 ¶ 24, "impugn[ed] his character and reputation amongst his colleagues by making false statements about [him]," *id.* ¶ 36, and continued her "false assertion[s]" that Garrick "verbally harassed and threatened her while at a County of Alameda function," *id.* ¶ 35.

"The mere fact that the prestige of [Freeman Garrick]'s office may have enhanced her influence" over MIMS, or Alameda County COVID-19 plan conference calls, "is not enough to convert her actions into state action." *Johnson*, 113 F.3d at 1117. "[A]ll actions of a government

United States District Court
Northern District of California

official are not, simply by virtue of the official's governmental employ, accomplished under the color of federal law." *Id.* at 1117–1118 (internal citation omitted). As Garrick points out, the COVID-19 planning call was open to "the top healthcare professionals in Alameda County" and was also attended by "County of Alameda Employees and Directors." ECF No. 46 ¶ 36. However, Garrick does not allege any non-conclusory facts explaining how Freeman Garrick invoked her "governmental status" to influence the behavior of those around her on the COVID-19 planning calls, or with regards to the MIMS Board. *Gallegos v. Glendale Adventist Med. Ctr.*, No. 13-cv-01083-DMG-JCX, 2013 WL 12474621, at *7 (C.D. Cal. May 15, 2013) (dismissing a complaint because while "public office might have provided [defendants] with influence" over a medical center's management, plaintiff failed to allege non-conclusory facts explaining how defendants used or invoked their offices and influence to terminate plaintiff from his management role.)

Third, Garrick claims that Freeman Garrick reported Dr. Herd as an act of retaliation for Dr. Herd's report of suspected child abuse. *Id.* ¶¶ 62, 126. Garrick does not allege how, and the Court can find no mechanism by which, Freeman Garrick acted within the scope of her public duties in reporting Dr. Herd.

Finally, Garrick alleges that Freeman Garrick "refused to serve an order . . . while in court and all parties were present," and instead "enlisted the services of the Alameda County Sheriff's Department" to serve a denied restraining order. *Id.* ¶ 38. As Garrick admits, private citizens may use the Sheriff's Department for service of process. ECF No. 60 at 12; Cal. Code Civ. Proc. § 527.6(z); Cal. Gov't Code § 26665. However, as Garrick points out, it does not seem likely that an ordinary citizen would have been able to use the Sheriff's Department in service of a denied restraining order in contravention of their internal policies. ECF No. 60 at 12–13. Garrick also alleges that Freeman Garrick paid no fees relating to the service of such process. *Id.* Taking the facts in a light most favorable to Garrick, this allegation may support how Freeman Garrick's service of a denied restraining order evidenced "substantial cooperation" between the private party and the State.

The Court finds that almost all of Freeman Garrick's alleged conduct was undertaken as a

private individual except for the service of the denied restraining order.  Accordingly, the Court next assesses whether there was any constitutional violation with respect to that incident.

### b.      Constitutional Violations

Even if the allegations demonstrated that Freeman Garrick acted in an official capacity, to allege a Section 1983 claim, Garrick must demonstrate that her actions resulted in a constitutional violation.  Garrick alleges that Freeman Garrick's "deliberate attempt to intimidate and coerce" Garrick "shocks the conscience" in violation of his substantive due process rights.  ECF No. 46 ¶ 45.  He claims that there is a "two-track system of justice"—one for Freeman Garrick and one for Garrick—in violation of his right to equal protection.  *Id.* ¶¶ 46–47.  Finally, he alleges that Freeman Garrick's conduct violated his right to procedural due process.  *Id.* ¶¶ 63–70.  Defendants respond that the complaint lacks the basic facts that would establish a constitutional violation.  ECF No. 48 at 19–20; ECF No. 52 at 15–16.  The Court reviews each alleged constitutional deprivation in turn.

### i.      Substantive Due Process

Substantive due process "forbids the government from depriving a person of life, liberty, or property in such a way that shocks the conscience or interferes with the rights implicit in the concept of ordered liberty."  *Nunez v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir. 1998) (internal citations and quotation marks omitted).  Accordingly, to maintain a substantive due process claim, a plaintiff must "as a threshold matter, show a government deprivation of life, liberty, or property."  *Id.*

Garrick alleges that Freeman Garrick served a denied restraining order[3] using the Sheriff's department which was "an overt act of use of an arm of the law to threaten, intimidate and coerce, so as to shock the conscience."  ECF No. 46 ¶ 59.  These allegations do not state a constitutional violation because Garrick has not alleged a deprivation of life, liberty, or property as a result of this alleged interaction.  *Nunez*, 147 F.3d at 871.  Indeed, the only property or liberty interest Garrick identifies in his opposition is "the property and liberty interest in his employment and

---

[3] *See* note 1, *supra*.

United States District Court
Northern District of California

1   reputation." ECF No. 60 at 12. But he alleges no connection between the service of a denied

2   restraining order and his work or reputation.

3         Accordingly, the Court finds that Garrick has not adequately alleged a violation of his

4   substantive due process rights.

5   **ii.**       **Equal Protection**

6         To state a claim under Section 1983 for "a violation of the Equal Protection Clause of the

7   Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose

8   to discriminate against the plaintiff based upon membership in a protected class." *Furnace v.*

9   *Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013) (citing *Barren v. Harrington*, 152 F.3d 1193, 1194

10  (9th Cir. 1998)).

11        Garrick does not allege in the SAC that his treatment was different on account of his

12  membership in a protected class. Instead, Garrick states only his belief that there is a "two-track

13  system of justice"—"[o]ne, is for the high-powered FREEMAN GARRICK and, a secondary tract

14  is for ordinary citizens such as OWEN GARRICK." ECF No. 46 ¶¶ 46–47. Accordingly, the

15  Court finds that Garrick has not adequately alleged a violation of his rights under the Equal

16  Protection Clause.

17  **iii.**       **Procedural Due Process**

18        "A section 1983 claim based upon procedural due process [] has three elements: (1) a

19  liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the

20  government; [and] (3) lack of process." *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th

21  Cir. 1993).

22        Garrick alleges that Freeman Garrick used the Alameda County Sheriff's Department to

23  serve a denied restraining order. ECF No. 46 ¶ 64. Garrick has not alleged that Freeman

24  Garrick's actions deprived him of any liberty or property interests. The service of a (denied) court

25  order does not amount to a deprivation of life, liberty, or property.

26        Accordingly, a Section 1983 claim cannot be maintained against Freeman Garrick.

27        **2.**       **Karl Doe and John Doe**

28        With respect to Alameda County Sheriff's Department Officers Karl Doe and John Doe,

Garrick alleges that they violated his rights under the Fourth and Fourteenth Amendments.  ECF No. 46 ¶ 2.  Specifically, Garrick claims that Karl Doe and John Doe were involved in the wrongful service of a denied restraining order.  *Id.* ¶ 38.  One of these two officers allegedly said "Jocelyn is one of us with the County.  We protect our people at the County.  If you continue to harass her, we will be back.  It is a shame how Black men are dying at the hands of the police, and we wouldn't want that to happen in a mishap."  *Id.*  He further alleges that the other officer added "[y]eah Mr. Garrick, it would be a shame for you to have an untimely mishap if we have to come back here."  *Id.*  Garrick claims that these statements "shock[ed] the conscience" in violation of his Fourteenth Amendment rights and "constituted excessive and deadly force in violation of the Fourth Amendment."  *Id.* ¶ 59.

The parties do not dispute that Officers Karl Doe and John Doe were acting under the color of state authority when they served Garrick with the denied restraining order.  The remaining question is whether Garrick has sufficiently alleged a constitutional deprivation from these actions.  The Court finds that he has not.

### a.      Fourth Amendment

Garrick alleges that the Officers' conduct "constituted excessive and deadly force in violation of the Fourth Amendment."  *Id.*  Defendants respond that Garrick offers no supporting facts that "any law enforcement officer [used] force against Plaintiff, let alone force so unreasonable as to be deemed excessive or deadly."  ECF No. 48 at 21 n.9.

The Fourth Amendment made applicable to the States by the Fourteenth Amendment, "guarantees citizens the right 'to be secure in their persons . . . against unreasonable . . . seizures' of the person."  *Graham v. Connor*, 490 U.S. 386, 394 (1989).  In evaluating a Fourth Amendment claim of excessive force, courts ask "whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them."  *Id.* at 397.  In determining whether an officer's actions were objectively reasonable, courts consider "(1) . . . the type and amount of force inflicted, (2) the government's interest in the use of force, and (3) the balance between the gravity of the intrusion on the individual and the government's need for that intrusion."  *Lowry v. City of San Diego*, 858 F.3d 1248, 1256 (9th Cir. 2017).  Courts in this circuit have dismissed excessive

14

force claims under the Fourth Amendment where the complaint alleged only verbal threats.  *See Forte v. Hughes*, Case No. 13-cv-01980-LJO-SMS, 2014 WL 2930834, at *8 (E.D. Cal. June 27, 2014) ("[V]erbal harassment alleged to have occurred . . . is not actionable independent of any physical abuse alleged to have occurred at the same time . . . [V]erbal harassment or abuse . . . is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983"); *Bennett v. San Bernardino Valley Cmty. Coll.*, No. 16-cv-1165-MWF-KSX, 2017 WL 10526123, at *9 (C.D. Cal. May 31, 2017) (dismissing an excessive force complaint against county defendants where plaintiff could only allege verbal threats.).

Garrick's SAC alleges that "Police Officers by their nature, height, bulk, heavily armed belts, and weapons are per se intimidating," ECF No. 46 ¶ 60, and that Officers Karl and John Doe verbally threatened Garrick to stay away from Freeman Garrick, *id.* ¶ 38.  To the extent Plaintiff attempts to allege an excessive force claim against Officers Karl Doe and John Doe, the SAC alleges only verbal threats that do not rise to the level of excessive force.

Thus, the Court finds that Garrick has not plausibly alleged a Fourth Amendment violation against the Officers.

### b.    Procedural Due Process

"A section 1983 claim based upon procedural due process [] has three elements: (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; (3) lack of process."  *Portman*, 995 F.2d at 904.

Garrick claims that the Officers violated his procedural due process rights when they served a denied restraining order.  *Id.* ¶ 64.  He argues that even if the conduct was permissible under California law, the Officers violated the Sheriff's Department policy in serving a denied restraining order.  ECF No. 60 at 13.

As a threshold matter, Garrick has not alleged that the Officers' actions deprived him of any liberty or property interests.  Furthermore, the Officers' violation of the Alameda County Sheriff's Department policies in serving a denied restraining order, on its own, does not establish a constitutional violation.  *Dillman v. Tuolumne Cnty.*, No. 13-cv-00404 LJO, 2013 WL 1907379, at *9 (E.D. Cal. May 7, 2013) (finding that a County policy "does not determine the relevant

United States District Court
Northern District of California

1   standards to be applied to a Section 1983 claim.  Section 1983 provides a civil action against state

2   actors who violate federal constitutional or federal statutory rights, not state law or local law

3   enforcement policies."); *see also Cousins v. Lockyer*, 568 F.3d 1063, 1070 (9th Cir. 2009)

4   (citations omitted) (same).

5        The Court finds that Garrick has failed to plausibly allege a procedural due process claim.

6                        **c.        Substantive Due Process**

7        Substantive due process "forbids the government from depriving a person of life, liberty,

8   or property in such a way that 'shocks the conscience' or 'interferes with the rights implicit in the

9   concept of ordered liberty.'"  *Nunez*, 147 F.3d at 871.  Accordingly, to maintain a substantive due

10  process claim, a plaintiff must "as a threshold matter, show a government deprivation of life,

11  liberty, or property." *Id.*  Courts in this circuit have previously found that intimidation in the form

12  of verbal threats or abuse does not rise to the level of a constitutional violation.  *Broemer v. Cent.*

13  *Intel. Agency*, No. 01-cv-CV-04340-MMM-RZX, 2002 WL 35644941, at *13 (C.D. Cal. Sept. 5,

14  2002) (finding that defendant's unspecified death threats did not give rise to a cognizable

15  deprivation of liberty claim); *Black Lives Matter-Stockton Chapter v. San Joaquin Cnty. Sheriff's*

16  *Off.*, 398 F. Supp. 3d 660, 677 (E.D. Cal. 2019) (finding that a "threat" to life or liberty, without

17  any allegations of immediacy or reality of threat, does not constitute a deprivation of either).

18        Garrick claims that the Officers violated his "right to be free from the threat of physical

19  harm, use of excessive force, threats of violence and death."  ECF No. 46 ¶¶ 2, 38.  Because

20  Garrick is proceeding pro se, the Court construes this claim as a substantive due process claim

21  against Officers Karl Doe and John Doe.

22        Assuming the truth of Garrick's allegations, as the Court must at this stage of the litigation,

23  the Court strongly disapproves of the Officers' conduct in using a denied restraining order as a

24  pretext to approach Garrick and in making threats of bodily harm.  However, Garrick's allegations

25  regarding these threats do not give rise to a cognizable constitutional deprivation because verbal

26  threats on their own are not enough.  *Broemer*, 2002 WL 35644941, at *13; *Black Lives Matter-*

27  *Stockton Chapter*, 398 F. Supp. 3d at 677.  Thus, the Court finds that Garrick has not plausibly

28  alleged a Section 1983 claim against Officers Karl and John Doe under the Fourteenth

United States District Court
Northern District of California

16

Amendment.

Accordingly, because Garrick has not plausibly alleged that Freeman Garrick acted under color of state authority, and because he has not alleged any constitutional deprivations resulting from Freeman Garrick and Officers Karl and John Doe's conduct, the Court dismisses Garrick's Section 1983 claims.[4]

### E.   Sufficiency of the Section 1985 Allegations

The Court previously dismissed all of Garrick's Section 1985 claims because he failed to allege the existence of "an agreement or 'meeting of the minds' by [Defendants] to violate his constitutional rights." ECF No. 39 at 13. Garrick once again brings claims pursuant to both Section 1985(2) and Section 1985(3). *See* ECF No. 46 ¶¶ 71–90. Garrick claims that there were two alleged conspiracies between Freeman Garrick and the Sheriff's Department: (1) the closure of the complaint against Freeman Garrick made by an unidentified third party and (2) the service of a denied restraining order. *Id.* Defendants move to dismiss because Garrick once again fails to plausibly allege any "meeting of the minds." ECF No. 48 at 22–23.

"Section 1985(2) contains two clauses that give rise to separate causes of action." *Portman*, 995 F.2d at 908. The first clause "addresses conspiracies which deter by force, intimidation, or threat a party or witness in federal court." *Bagley v. CMC Real Est. Corp.*, 923 F.2d 758, 763 (9th Cir. 1991) (internal citations and quotation marks omitted). The second clause "creates a federal right of action for damages against conspiracies which obstruct the due course of justice in any State or Territory with intent to deny equal protection." *Id.* A claim under this second clause "requires an allegation of class-based, invidiously discriminatory animus." *Id.* (quoting *Phillips v. Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers, Loc. 118*, 556 F.3d 939, 941 (9th Cir. 1977)). To state a claim under 1985(3), "a plaintiff must [allege], *inter*

---

[4] With respect to Garrick's Fourth and Fourteenth Amendment claims, the Court need not make further inquiry concerning qualified immunity because, as explained above, Garrick has not alleged any constitutional deprivation and has also not met his burden to show that the rights at issue were clearly established. *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998) (finding that "the better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged the deprivation of a constitutional right at all. Normally, it is only then that a court should ask whether the right allegedly implicated was clearly established at the time of the events in question.")

*alia*, (1) that 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus [lay] behind the conspirators' action,' . . . and (2) that the conspiracy 'aimed at interfering with rights' that are 'protected against private, as well as official, encroachment.'" *Butler v. Elle*, 281 F.3d 1014, 1028 (9th Cir. 2002) (alterations in original) (quoting *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267–68 (1993)).

A Section 1985 claim relies on a Section 1983 violation.  That is, "without a plausibly alleged § 1983 claim, plaintiff's conspiracy claims under § 1985 . . . must also be dismissed." *Doe v. City of Concord*, No. 20-cv-02432-JD, 2021 WL 3140782, at *2 (N.D. Cal. July 26, 2021) (citing *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 930 (9th Cir. 2004) ("to state a claim for conspiracy under § 1985, a plaintiff must first have a cognizable claim under § 1983")). "In order to survive a motion to dismiss, plaintiffs alleging a conspiracy to deprive them of their constitutional rights must include in their complaint non-conclusory allegations containing evidence of unlawful intent or face dismissal." *Lara Urbina v. Carson*, No. 07-cv-00153-OWW-TAG, 2007 WL 2814652, at *11 (E.D. Cal. Sept. 25, 2007) (internal quotations omitted).  "A plaintiff must plead with particularity as to which defendants conspired, how they conspired and how the conspiracy led to a deprivation of his constitutional rights." *Id.*  Garrick's Section 1985 claims fail on both fronts, for several reasons.

First, as explained above, Garrick has failed to allege sufficient facts to maintain a Section 1983 claim against Freeman Garrick, or Officers Karl and John Doe under the Fourth and Fourteenth Amendment—that is, he has not pleaded facts that would support a constitutional deprivation.  This requires dismissal of a Section 1985 claim.  *City of Concord*, 2021 WL 3140782, at *2.  Second, Garrick fails to state a claim under the first clause of Section 1985(2) because he has not alleged a proceeding in federal court from which Defendants' conduct deterred his participation.  Third, Garrick's claims under the second clause of Section 1985(2) and under Section 1985(3) also fail because he has not alleged with particularity how Freeman Garrick and the Sheriff's Department conspired and how the conspiracy led to a deprivation of his constitutional rights.

With respect to the closure of the complaint against Freeman Garrick, Garrick's complaint

1    states that Freeman Garrick received a forwarded email from the Sheriff's Department which

2    stated "[t]his came into our complaint email. I'm closing it out."  ECF No. 46 ¶ 82.  By the plain

3    language of the email, the complaint was closed even before Freeman Garrick responded to it.  *Id.*

4    Garrick has not pleaded how Sergeant Ray Kelly conspired with Freeman Garrick, or how the

5    conspiracy led to a deprivation of his constitutional rights.  He has also not alleged how there was

6    any intent to deny equal protection, or that Freeman Garrick or Sergeant Ray Kelly possessed

7    racial or class-based animus as required under Section 1985(2) and (3).  *Wilkins v. Cnty. of*

8    *Alameda*, No. 11-cv-2704 LHK-PR, 2012 WL 5464642, at *3 (N.D. Cal. Nov. 8, 2012)

9    (dismissing plaintiff's Section 1985 claim because plaintiff alleged no facts to support a claim of

10   conspiracy, or otherwise allege how any racial discrimination furthered the conspiracy.)

11       With respect to the service of the denied restraining order, Garrick alleges that Freeman

12   Garrick used the Alameda County Sheriff's Department to serve the order.  *Id.* ¶ 88.  He alleges

13   that using the officers "was an overt act of use of an arm of the law to threaten" Garrick.  *Id.*  He

14   also quotes specific race-based threats made by Officers Karl and John Doe.  *Id.* ¶ 38.  This

15   incident presents a closer question because Garrick has alleged racial discrimination based on the

16   Officers' statements.  However, other than alleging that Freeman Garrick asked the Sheriff's

17   Department to serve a denied restraining order, Garrick has not alleged that Freeman Garrick was

18   motivated by any racial animus and has failed to allege with particularity "a conspiracy to

19   intimidate Plaintiff among the Defendants . . . or that he was deprived of a constitutional right as a

20   result."  *Lara Urbina*, 2007 WL 2814652, at *11.

21       Consequently, Garrick's claim under Section 1985 also fails and the Court grants

22   Defendants' motion to dismiss the Section 1985 claims.

23   **V.    SUPPLEMENTAL JURISDICTION**

24       Because the Court has now dismissed the federal claims against the Defendants, the

25   question for the Court is whether it should decline supplemental jurisdiction under Section

26   1367(c)(3).

27       A district court "may decline to exercise supplemental jurisdiction" if it "has dismissed all

28   claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  When federal claims are

eliminated at an early stage of litigation, the district court has "a powerful reason to choose not to continue to exercise jurisdiction." *Ochoa v. T-Mobile USA, Inc.*, No. 20-CV-02306-JST, 2020 WL 4050503, at *3 (N.D. Cal. July 20, 2020) (quoting *Carnegie-Mellon v. Cohill*, 484 U.S. 343, 351 (1988)).  Ordinarily, "[w]hen federal claims are dismissed before trial, . . . pendent state claims also should be dismissed." *Scholar v. Pac. Bell*, 963 F.2d 264, 268 n.4 (9th Cir. 1992) (quoting *Jones v. Cmty. Redevelopment Agency,* 733 F.2d 646, 651 (9th Cir. 1984)) (alterations in original).

In this case, although the litigation is more than a year old and "the Court has undoubtedly committed judicial resources to moving the case forward . . . the Court has not committed *substantial* resources.  The case is relatively early in the proceedings, and no trial date has been set." *Chang v. Rockridge Manor Condo.*, No. 07-CV-4005-EMC, 2008 WL 2683075, at *11 (N.D. Cal. July 3, 2008), *aff'd*, 344 F. App'x 365 (9th Cir. 2009) (emphasis in original).  Because Garrick's federal claims have been dismissed early in this litigation, before the pleadings have been settled and prior to discovery, the Court declines to exercise supplemental jurisdiction. Garrick's claims under the Bane Act, for intentional infliction of emotional distress, and for unfair competition are dismissed without prejudice.  Defendants' pending anti-SLAPP motion is denied without prejudice.  *Choyce v. S.F. Bay Area Indep. Media Ctr.*, No. 13-cv-01842-JST, 2014 WL 2451122 at *6 (N.D. Cal. June 2, 2014) (denying defendants' anti-SLAPP Motions without prejudice where "the Court has declined to exercise jurisdiction over state-law claims," and finding that defendants have no presumptive right to have anti-SLAPP motions heard by a federal court).

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss the federal claims are granted. "Because Plaintiff has had a previous opportunity to amend, has not remedied this deficiency, and gives no indication that amendment would resolve the problems, the Court finds amendment would be futile and dismisses [Plaintiff's] claim[s] with prejudice." *Rhodes v. Scottsdale Cmty. Coll.*, No. CV-18-02063-PHX-RCC, 2019 WL 7194694, at *4 (D. Ariz. Dec. 26, 2019); *see also Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) ("[W]here the

United States District Court
Northern District of California

1    plaintiff has previously been granted leave to amend and has subsequently failed to add the

2    requisite particularity to its claims, the district court's discretion to deny leave to amend is

3    particularly broad.") (internal quotation, citation, and alterations omitted).

4        Garrick's state law claims are dismissed without prejudice towards Garrick re-filing in

5    state court.  Defendants' anti-SLAPP motion is denied without prejudice.

6        The Clerk shall enter judgment and close the file.

7        **IT IS SO ORDERED.**

8    Dated:  July 24, 2024



         JON S. TIGAR
         United States District Judge